OPINION
Pursuant to this court's General Order of Reference of March 31, 1997, I have been duly appointed to act as a magistrate in any original action filed in this court. Consistent with the general authority granted to magistrates under Civ.R. 53(C)(2), I have conducted an evidential hearing in the instant case. In light of the evidence presented by the parties, I respectfully submit the following decision for your consideration:
 I. STATEMENT OF THE CASE
The subject matter of this case concerns the propriety of the decision of respondent, the Lake County Board of Commissioners, to deny a petition for annexation of certain real property. Relator, the City of Painesville, contends that respondent failed to follow the proper procedure in making its decision and that, as a result, the merits of its decision are also flawed. Thus, relator seeks the issuance of a writ of mandamus to compel respondent to render a new decision granting the annexation petition.
The proposed annexation pertains to approximately twenty-two acres of land located beside the Grand River in Lake County, Ohio. At the present time, the property at issue lies within the territorial limits of Painesville Township, a political subdivision which is distinct from relator. However, one side of the property's perimeter abuts the border of relator's territorial limits.
As of October 1, 1998, the twenty-two acres of land were owned by Mark Moore ("Moore"), a real estate developer. At some point prior to that date, Moore had formulated a plan to build a multi-family development on the property. In conjunction with this plan, Moore had determined that it would be beneficial for the property to be annexed into the territorial limits of relator.
Therefore, pursuant to the procedure set forth in R.C. 709.02, Moore submitted a "private-citizen" application for annexation with respondent. After holding a hearing on the matter, respondent passed a resolution denying the application. Moore then appealed this determination to the Lake County Court of Common Pleas, but that court upheld the denial of the proposed annexation.
Once the common pleas court had rendered its final judgment in Moore's appeal, he negotiated an "interim development agreement" with relator. Under the primary terms of this agreement, Moore promised to convey the twenty-two acres of land to relator. This agreement also contained the following provisions: (1) after the transfer of title to relator, Moore would still be responsible for payment of the mortgage on the property; (2) Moore would continue to be responsible to pay one-half of all real estate taxes and assessments imposed after the conveyance; (3) Moore would have sole responsibility to maintain the land while relator held title; (4) Moore would retain a general right to go upon the land after giving reasonable notice to relator; (5) relator would be obligated to submit its own petition for annexation immediately after the transfer; (6) relator agreed to provide water and electric services to the development in the future, as well as allowing sewage from the development to be treated at relator's plant; and (7) Moore and relator promised to enter into a second agreement setting forth the specific requirements for the development.
In addition to the foregoing, the interim development agreement had specific terms governing the "reconveyance" of the property. Pursuant to one of these terms, relator was obligated to convey the property back to Moore once the annexation procedure had been completed and the second development agreement had been finalized. The other terms on this topic governed the reconveyance of title if the property was never annexed or other contingent situations occurred. For example, one of the terms provided that if an adverse decision on relator's annexation petition had been issued and all possible appeals in this matter had been exhausted, Moore would have the right to require relator to reconvey the property.
The final draft of the interim development agreement was executed by relator and Moore in December 1998. Consistent with the agreement's basic provisions, Moore then gave relator a limited warranty deed to the land. This deed was subsequently filed with the Lake County Recorder. In return, relator gave Moore the sum of Ten Dollars ($10.00) and other "valuable considerations."
Even before the interim development agreement was signed, relator's city council passed a resolution authorizing the city manager to commence the required proceedings to annex the property in question. Pursuant to this directive, the city manager filed with respondent an annexation petition under R.C. 709.15. In this petition, the city manager asserted that the proposed annexation was proper because the property was located entirely within Lake County, was contiguous to relator, and was owned by relator.
Prior to considering the petition, respondent referred the matter to the Lake County Engineer. Upon reviewing the petition and the relevant public records, the engineer told respondent that there were a few minor errors in relator's legal description of the property. After respondent had informed relator of the errors, relator submitted an amended petition for annexation.
The amended petition was again referred to the county engineer. In a written letter to respondent, the engineer stated that his review of the county tax records shows that the property was contiguous to relator and was owned by relator.
After receiving the engineer's letter, respondent asked its counsel, Attorney Richard Collins ("Collins"), to review the issue of whether relator was the "true owner" of the property. In response, Collins submitted a legal memorandum to the three county commissioners and spoke to them individually about the matter.
On March 9, 1999, respondent considered the merits of relator's annexation petition at a scheduled meeting. Based upon the discussion had during that meeting, respondent passed a resolution denying the proposed annexation. As the grounds for this decision, respondent stated in the resolution that it had concluded that relator did not own the property in question.
Approximately one month after respondent had acted upon the annexation petition, relator brought the instant action in this court. In its mandamus petition, relator alleged that respondent had had a mandatory duty to grant the annexation petition in this situation. In its answer, respondent asserted that such a duty did not exist because relator was not the true owner of the property.
While the parties were engaging in discovery, an issue arose as to whether relator had the right to obtain a copy of Collins' legal memorandum. In relation to this question, respondent filed a motion for a protective order, arguing that the attorney-client privilege barred the discovery of the memorandum. This court granted the protective order, holding that the memorandum was not discoverable because it was not relevant to any factual issue in the case. Specifically, this court held that there had been no waiver of the attorney-client privilege because respondent had not raised its reliance upon the memorandum as a defense to the mandamus claim.
After the discovery issue had been resolved, the parties filed competing motions for summary judgment. Upon reviewing the parties' respective evidential materials, this court overruled both motions on the grounds that the parties had failed to address two important factual issues. The issues were: (1) had respondent been aware of the interim development agreement when it had passed the resolution to deny the annexation petition; and (2) what procedure had respondent followed in taking notice of the interim development agreement? This court then ordered that an evidential hearing be held on the matter.
On June 30, 2000, the evidential hearing was held before me in the courtroom of the Eleventh District Court of Appeals in Warren, Ohio. At the beginning of this proceeding, I stated on the record that, immediately before the hearing began, I had had a conference with the attorneys of both parties in chambers. I further stated that the attorneys had told me during the conference that they had been able to stipulate as to the majority of the facts in this case. I further stated that we had then had a general discussion of the possible legal conclusions which could flow from the stipulated facts. Finally, I indicated on the record that, at the conclusion of the conference, I had informed the attorneys that our preliminary discussion concerning the legal effect of the stipulations should not restrict the introduction of any evidence which they believed was relevant to the outcome of the action.
Following my initial statement, Attorney Stephen O'Bryan gave an opening statement in behalf of relator. At the beginning of his statement, Attorney O'Bryan officially moved for the introduction of the parties' joint stipulations of facts into evidence. After Attorney Michael Brown indicated in behalf of respondent that he had agreed to the stipulations, I accepted them into evidence. In addition to containing twenty factual statements pertaining to the merits of the litigation, the joint stipulations were accompanied by copies of fifteen documents which, according to the parties, were true and accurate copies of the originals. Furthermore, the joint stipulations contained a statement that the parties had agreed that I should consider all of the evidential materials submitted with both motions for summary judgments as evidence in this matter.
Upon my acceptance of the joint stipulations, Attorney O'Bryan rested relator's case in chief. Attorney O'Bryan then argued that respondent should not be allowed to present any evidence concerning Attorney Collins' legal memorandum to the three commissioners because respondent had not asserted Collins' legal opinion as a defense to the mandamus claim. Attorney O'Bryan also asserted that the proposed evidence on the legal opinion was irrelevant because the commissioners should not have considered it in rendering their decision.
At the start of his opening statement, Attorney Brown moved to amend respondent's answer to assert Attorney Collins' opinion as a defense. In making this motion, Attorney Brown stated that respondent was now willing to waive the attorney-client privilege as to the legal memorandum. Attorney Brown also argued that relator would not be prejudiced by the amendment because, notwithstanding this court's protective order, respondent had given relator a copy of the memorandum and had allowed respondent to question Attorney Collins on the matter during a deposition.
Attorney O'Bryan objected to the motion to amend, again arguing that any testimony concerning the commissioners' reliance on Attorney Collins' legal opinion was irrelevant. After hearing further arguments on the issue, I then granted the motion to amend and stated that respondent would be allowed to present evidence as to whether the commissioners had actually relied upon Attorney Collins' opinion in making their decision. I further stated that the parties would be required to submit post-hearing briefs on the issue of whether, as a matter of law, respondent's reliance of its counsel's opinion was a valid defense to a mandamus claim.
Attorney Brown then completed his opening statement, maintaining that the proposed evidence was relevant because the three commissioners had a right to ask Attorney Collins to investigate the "ownership" question further and to render a legal opinion as to whether relator was the true owner of the property at issue.
Upon completing his opening statement, Attorney Brown presented four witnesses in behalf of respondent. The first witness was Lake County Commissioner Daniel Troy. During his direct examination, Commissioner Troy testified that the commissioners had asked Attorney Collins to look into the ownership issue because he had read a news story as to the amount of consideration relator had paid for the property. He further stated that he had been troubled by the circumstances surrounding the proposed annexation because he did not believe that the Ohio General Assembly had intended for the procedure under R.C. 709.16 to apply when a municipality had acquired property in this fashion. Finally, Commissioner Troy stated that his ultimate decision to vote to deny relator's petition was primarily based upon Attorney Collins' legal opinion because that opinion was consistent with his own thoughts on the matter; i.e., that relator was not the true owner because the property would revert back to Moore after the annexation had occurred.
During cross-examination, Commissioner Troy admitted that, in making his decision on the petition, he considered information which relator had not included in its petition and had not been referenced in the letter from the county engineer. He further admitted that he had expressly relied upon statements by Attorney Collins that the terms of the interim development agreement in this case had been different than the terms of an agreement in a prior case in which the annexation petition had been granted.
The second witness to testify for respondent was Lake County Commissioner Robert Aufuldish. The crux of the Aufuldish testimony on direct was that he had predicated his decision to vote to deny the annexation petition on Attorney Collins' legal memorandum. Commissioner Aufuldish stated that, upon reading the memorandum and discussing the matter with Attorney Collins personally, he had agreed that relator was not the owner of the property which it was seeking to annex.
During cross-examination, Commissioner Aufuldish testified that he had rejected the county engineer's conclusion on the ownership issue and had requested Attorney Collins to obtain more facts. He also stated that the "new" facts presented by Attorney Collins as to the nature of the interim development agreement had convinced him that Moore still owned the property.
The third witness in behalf of respondent was Lake County Commissioner Mildred Teuscher. During direct examination, Commissioner Teuscher testified that she had voted against relator's annexation petition because she believed that relator could not be the true owner of the property. According to Commissioner Teuscher, this belief was based on the "fact" that the property would ultimately revert back to Moore. She further stated that she had relied heavily upon the additional information provided by Attorney Collins.
During cross-examination, Commissioner Teuscher testified that she did not see the interim development agreement before she made her decision. She also stated that, besides the information supplied by Attorney Collins, she had considered other "evidence" which had not been submitted by relator and had not been referenced by the county engineer.
The final witness for respondent was Attorney Collins. During direct examination, Attorney Collins testified that: (1) as outside counsel for respondent, he had been asked to give an opinion on the ownership issue; (2) in completing this task, he believed that he was obligated to collect additional information to determine if the official records reviewed by the county engineer accurately showed who was the actual owner; (3) his belief that he was allowed to obtain additional information was based in part upon the fact that the engineer was allowed to look at outside sources; (4) he had never followed this type of procedure in relation to any prior municipal petitions for annexation; (5) after obtaining the additional information and performing research on the ownership issue, he had prepared his legal memorandum and distributed it to the three commissioners; and (6) he had then spoken to each commissioner individually on the matter and told them that it was his opinion that Moore still owned the property.
During cross-examination, Attorney Collins stated that, prior to preparing his legal memorandum, he had been aware that the commissioners had denied Moore's individual petition for annexation. He further stated that a majority of the additional information he provided to the commissioners was from the interim development agreement, and that he had obtained a copy of this document from an attorney for Painesville Township. As to the agreement, Attorney Collins testified that he had compared the terms of this agreement to the provisions of a similar agreement which had formed the basis of a prior annexation petition brought by relator, and that he had concluded that the two agreements differed to such an extent that the instant annexation petition should be denied. In addition, Attorney Collins admitted that he had never contacted any official associated with relator so that they could explain the terms of the interim development agreement.
At the end of Attorney Collins' testimony, respondent rested its case. Relator did not present any new evidence in rebuttal. After the parties were instructed that they could submit post-hearing briefs, the evidential hearing concluded.
 FINDINGS OF FACT
As was noted above, in overruling the parties' competing motions for summary judgment, this court held that the parties' evidential materials were insufficient to address two factual issues. These issues were: (1) had respondent been aware of the interim development agreement at the time it denied relator's annexation petition; and (2) how did respondent receive notice of the interim development agreement?
As a preliminary matter, I would note that this court was able to narrow the scope of the factual inquiry because the evidential materials accompanying the summary judgment motions demonstrated that none of the other material facts in this case were in dispute. Specifically, the evidential materials indicated that: (1) in submitting its amended annexation petition to respondent, relator had alleged that it was the owner of the property in question; (2) in its written response to respondent, the Lake County Engineer had stated that the county tax records showed that relator owned the twenty-two acres of land; (3) no other document was ever officially submitted to respondent which contested relator's ownership allegation; and (4) despite this, respondent's three members unanimously voted to deny the annexation petition on the basis that relator was not the owner. Furthermore, notwithstanding the nature of the evidential materials, both parties based their arguments in their respective summary judgment motions upon the assumption that respondent's decision had turned upon its interpretation of the interim development agreement. Thus, this court concluded that there was a factual dispute as to whether respondent had indeed predicated its decision on the agreement and how respondent had become aware of the agreement.
After having conducted the evidential hearing in this matter, I conclude that the two issues cited in this court's prior judgment entry are still the only material factual disputes which need to be resolved. Moreover, I further conclude that, in light of the evidence presented at the hearing, the resolution of these disputes is a relatively simple exercise.
In relation to the first factual issue, my review of the parties' joint stipulations shows that the parties agreed that the three county commissioners never had the opportunity to read the interim development agreement prior to rendering their decision. Nevertheless, the parties further stipulated that Attorney Collins' legal memorandum referred to this document and discussed its possible ramifications on the ownership issue. In addition, the stipulations expressly provided that the Collins memorandum was distributed to each of the commissioners.
Similarly, the testimony of respondent's four witnesses demonstrates that a copy of the Collins memorandum was given to each commissioner and that each of them read it. Attorney Collins also testified that he spoke to each commissioner individually on the matter and discussed the effects of the interim development agreement with him or her. Hence, the evidence before me supports the finding that the county commissioners were aware of the existence of the agreement before they made their decision on the annexation petition.
As to the second factual issue, I would note that the joint stipulations set forth a list of all of the documents pertaining to the proposed annexation which were officially filed with respondent's clerk. These documents included, inter alia, relator's original petition, the amended petition, the response of the county engineer, and the resolution denying the annexation. My review of these documents indicates that none of them contain any specific reference to the interim development agreement.
When the foregoing is considered together with the testimony of respondent's four witnesses, it becomes evident that the county commissioners' knowledge of the interim development agreement was not based upon information in the record before respondent. Instead, their knowledge was predicated upon secondhand information which they received from Attorney Collins and other sources. As to this point, I would emphasize that Attorney Collins testified that he obtained a copy of the interim development agreement from the counsel of Painesville Township. In turn, Attorney Collins conveyed the information he derived from the agreement to the commissioners through his legal memorandum. Finally, it should be noted that two of the commissioners testified that, in addition to the Collins memorandum, they considered information from other sources, such as newspaper articles.
As an aside, I would indicate that respondent presented considerable evidence which was intended to establish the reason why the county commissioners had directed Attorney Collins to obtain additional information on the matter. Considerable evidence was also submitted as to the legal basis for Attorney Collins' opinion that relator was not the owner of the property. Additionally, relator elicited testimony from the four witnesses which was intended to show that Attorney Collins had acted arbitrarily in deciding what information he would supply to the commissioners.
Regarding these issues, I conclude that, in light of legal analysis in the next section of this decision, the resolution of these issues is not material to the outcome of this case. Accordingly, it is not necessary to make findings of fact on these issues.
Consistent with the foregoing discussion, I hereby make the following findings in relation to the remaining facts:
 1. The parties' joint stipulations of fact provided that the property which was the subject of relator's annexation petition was located within Lake County and was contiguous to relator.
 2. The amended petition and the written response of the county engineer contained information which only supported the conclusion that relator was the owner of the property.
 3. Notwithstanding the lack of any reference to the interim development agreement in the amended petition and the county engineer's response, each of the three county commissioners were aware of the agreement when they voted to deny relator's annexation petition.
 4. Each commissioner's knowledge of the interim development agreement stemmed from either the Collins legal memorandum or other sources.
 CONCLUSIONS OF LAW
In arguing that respondent was obligated to grant its annexation petition, relator submits that respondent had no discretion to allow its outside counsel to gather additional information on the ownership issue. Specifically, relator argues that, in considering an annexation petition in which a municipality asserts that it is the owner of the property, a board of county commissioners cannot "hear" any new evidence which is not set forth in the specific documents upon which the petition is predicated. Based on this, relator maintains that respondent should not have considered any information about the interim development agreement.
Relator's annexation petition was filed pursuant to R.C. 709.16(B). This statute provides, in pertinent part:
 "(B) If the only territory to be annexed is contiguous territory owned by the municipal corporation seeking annexation and if such territory is located entirely within the same county as the municipal corporation seeking annexation, upon receipt of the petition required by section 709.15 of the Revised Code, the board of county commissioners shall, by resolution, approve the annexation * * *. The annexation shall be complete upon the entry, pursuant to the board's resolution, of an order upon the journal of the board authorizing such annexation"
In interpreting R.C. 709.16(B), the Supreme Court of Ohio has held that the procedure to be followed in ruling upon the petition was intended to be abbreviated. In In re Annexation of 466.12 Acres of Land (1992),65 Ohio St.3d 226, the issue before the court was whether a board of township trustees could bring an administrative appeal from a decision of the county commissioners to grant the annexation petition. In concluding that such an appeal would not lie, the court emphasized that the determination under R.C. 709.16(B) was ministerial in nature and that no public hearing had to be held.
Consistent with the Supreme Court's holding in the foregoing case, this court has described the procedure in R.C. 709.16(B) in the following manner:
 "Thus, when a municipality seeks to annex land which it owns, which is contiguous, and which is entirely located within the same county as the municipality, the municipality need only file a petition for the annexation before the board of county commissioners. The proceedings before the county commissioners, following the wording of the statute, are ministerial in nature, and would require no hearing. The board of county commissioners need only determine that the above three elements are met in order to approve the annexation." Bd. of Trustees of Painesville Twp. v. City of Painesville (June 26, 1998), Lake App. No. 97-L-090, unreported, at 6, 1998 WL 553293.
As part of its analysis in the foregoing case, this court expressly stated that the annexation provisions of R.C. 709.16(B) were "non-justiciable" in nature. Id.
Given these characterizations of the R.C. 709.16(B) procedure, it logically follows that a board of county commissioners does not act in a quasi-judicial manner when it considers a municipality's annexation petition. That is, in deciding whether a municipality has met the three elements for annexation, a board does not make factual determinations by weighing and evaluating competing evidence in the same fashion as a court of law does. Accordingly, a board cannot "hear" evidence in the same manner as it does in other types of annexation actions; instead, it can consider only the annexation petition itself and any documentation from the county engineer.
This interpretation is also supported by the basic definition of the term "ministerial." In McElrath v. Trumbull County Children's Serv. Bd.
(Sept. 23, 1994), Trumbull App. No. 93-T-4959, unreported, at 6-7, 1994 Ohio App. LEXIS 4271, this court noted that Black's Law Dictionary defined ministerial in the following manner:
 "`That which is done under the authority of a superior; opposed to judicial. That which involves obedience to instructions, but demands no special discretion, judgment, or skill. Official's duty is "ministerial" when it is absolute, certain and imperative, involving merely execution of a duty arising from fixed and designated facts.'"
Again, given that a judgment cannot be made in a ministerial function, it follows that a board of county commissioners cannot hear or weigh any additional information on the matter and then make a factual determination based upon that information.
In the instant case, that is exactly what respondent did. In response to a request by the three commissioners, Attorney Collins obtained a copy of the interim development agreement between relator and Moore, despite the fact that neither the amended petition nor the county engineer's response referred to that agreement. Attorney Collins then conveyed information concerning the agreement to the commissioners through his legal memorandum. In turn, the commissioners relied upon that information to support their conclusion that relator did not own the property.
If the General Assembly had intended for county commissioners to hear evidence on a municipality's annexation petition, it would have provided for a public hearing on the matter, just as it has in other types of annexation proceedings. In the absence of such a provision, it follows that respondent did not have the authority to consider the new information submitted by Attorney Collins.
In reliance upon Attorney Collins' testimony, respondent maintains that Collins was acting in the same role as the county engineer in supplying the new information to the commissioners. However, in submitting his written response to the commissioners, the county engineer was merely verifying the assertions contained in the amended petition. In contrast, the information in Attorney Collins' legal memorandum went beyond the scope of relator's assertions and addressed a new issue. Thus, Attorney Collins' act went beyond the engineer's scope of input.
In arguing that it acted properly in considering the legal memorandum, respondent contends that this narrow interpretation of R.C. 709.16(B) deprives it of the ability to determine whether a true sale of property has occurred. Respondent asserts that it should not be put in the position of having to approve the annexation of land which was sold merely to avoid other annexation statutes.
Certainly, it would be preferable for a board of county commissioners to have the ability to stop "end runs" of the statutory scheme. However, it is not the province of this court to grant this ability. In his concurring opinion in In re Annexation of 466.112 Acres of Land, supra, Justice Wright stated that it would be beneficial if a board could hold a public hearing on the issue of contiguity under R.C. 709.16(B). Nevertheless, he then indicated that this was a matter for the General Assembly to consider. The fact that a "loophole" exists does not justify judicial activism to fill the gap.
Pursuant to the foregoing analysis, I conclude that respondent exceeded the scope of its authority by considering the new information concerning the interim development agreement.[1] I further conclude that if respondent had limited the scope of its review to the amended annexation petition and the county engineer's response, it would have been obligated to conclude that relator owned the property in question. Moreover, it was undisputed that the property lies totally within Lake County and was contiguous to relator. Thus, the record before me supports the conclusion that relator satisfied the three elements for annexation under R.C.709.16(B).
In turn, because respondent's duties under R.C. 709.16(B) are ministerial in nature, it had a clear duty to grant relator's annexation petition. Correspondingly, relator had a clear right to have the property annexed. Moreover, relator did not have an adequate legal remedy in this instance because, as this court noted in Bd. of Trustees of PainesvilleTwp., supra, R.C. 709.16(B) does not contain any provision allowing for any type of an appeal from respondent's decision. Accordingly, as relator has met each of the three elements of a mandamus claim, the issuance of a writ of mandamus is warranted.
In summation, I hereby render the following conclusions of law:
 1. Since a board of county of commissioners acts in a ministerial fashion in ruling upon a municipality's annexation petition under R.C. 709.16(B), respondent did not have the authority to consider the new information concerning the interim development agreement.
 2. If respondent would have considered only the amended annexation petition and the county engineer's response, it would have been obligated to conclude that relator was the owner of the twenty-two acres of land.
 3. Because relator satisfied all three elements for annexation under R.C. 709.16(B), respondent had a duty to grant the annexation petition.
 DECISION
Pursuant to the foregoing analysis, it is ordered that judgment is hereby entered in favor of relator on its mandamus claim. A writ of mandamus shall be issued which will require respondent to pass a new resolution vacating its prior resolution of March 9, 1999, and granting relator's annexation petition.
The foregoing decision is recommended to this court for its approval and adoption pursuant to Civ.R. 53.
A party may, within fourteen days of the filing of this decision, serve and file written objections to the magistrate's decision. If objections are timely served and filed by any party, any other party may serve and file objections within ten days of the date on which the first objections were filed, or within the time otherwise prescribed by Civ.R. 53, whichever period last expires. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds thereof. Upon consideration of the objections, the court may: adopt, reject or modify the decision; hear additional evidence, return the decision to the magistrate with instructions, or hear the matter itself. (See Civ.R. 53, as may be amended from time to time.)
These and all other provisions of the Ohio Rules of Civil Procedure must be satisfied, or objections may be overruled.
 CERTIFICATE OF SERVICE
Certification is hereby made that a copy of the foregoing decision of the Magistrate was served upon the parties and/or the respective counsel of record on the fifth day of January, 2001.
 ___________________________ Matthew O. Lamb
cc: Atty. Stephen M. O'Bryan Atty. Joseph M. Gurley Charles E. Coulson, Lake County Prosecutor Michael P. Brown, Assistant Prosecutor
[1] Consistent with the foregoing conclusion, it follows that respondent's reliance upon Attorney Collins' legal opinion was not a valid defense to relator's mandamus claim.